IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 23, 2022

## STATE OF TENNESSEE v. ETHAN NEWTON BEAN

**Appeal from the Circuit Court for Blount County**
**No. C-26203; C-26054     Tammy M. Harrington, Judge**

_____

### No. E2021-01492-CCA-R3-CD
_____

The Defendant-Appellant, Ethan Newton Bean, pleaded guilty to one count of aggravated assault in case number C-26054 and one count of aggravated assault in case number C-26203. The Defendant received consecutive five-year sentences for each count, to be served under supervised probation. He concedes on appeal that the trial court properly revoked his probation but contends that it abused its discretion in ordering the remainder of his sentence to be served in confinement. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Stephanie J. Hazlewood, Maryville, Tennessee, for the Appellant, Ethan Newton Bean.

Herbert H. Slatery III, Attorney General and Reporter; Kayleigh Butterfield, Assistant Attorney General; Mike L. Flynn, District Attorney General; and Tiffany Smith, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On October 18, 2018, the Defendant entered a guilty plea to one count of aggravated assault in case number C-26054. He received a five-year alternative sentence to be served under supervised probation. The same day, the Defendant entered a guilty plea to one count of aggravated assault in case number C-26203, for which he also received a five-year alternative sentence to be served under supervised probation and consecutively to the sentence in case number C-26054.

On July 1, 2021, the Defendant tested positive for amphetamine, methamphetamine, and marijuana, in violation of his conditions of probation. A violation of probation warrant was filed on August 23, 2021.[1] On December 13, 2021, the trial court conducted a violation of probation hearing.

Tennessee Department of Correction ("TDOC") Probation Officer Ashley Bickel testified that she had been the Defendant's probation officer since February 2020. She explained that the Defendant's special probation conditions included being placed on alcohol and drug monitoring for twelve months, completing a mental health evaluation, and complying with an "intensive outpatient program with psychological counseling and medication management until discharged by provider." He was also ordered to "continue with compliance of intensive outpatient program and aftercare counseling." Officer Bickel stated that the Defendant had not complied with his probation conditions by refusing mental health services and by failing a drug test. She elaborated that the Defendant initially saw a therapist at the Helen Ross McNabb Center but that the therapist ceased seeing patients on April 30, 2019, and the Defendant did not seek further mental health services. The Defendant declined "coordination of mental health intake" during a mental health assessment with his forensic social worker on June 16, 2021. Officer Bickel testified that the Defendant tested positive for amphetamine, methamphetamine, and marijuana on July 1, 2021, after visiting her office to provide a copy of an order of protection. The Defendant admitted to using marijuana.

On cross-examination, Officer Bickel agreed that she had not filed a probation violation for the Defendant's failure to seek mental health services. She was unsure why there was a delay in filing the probation violation following the Defendant's failed drug test. Officer Bickel explained that she was not present when the Defendant was drug tested. She agreed that the Defendant was on time for his appointments and cooperative. Officer Bickel further agreed that the Defendant wore an alcohol and drug monitor for approximately two years but noted that she was not his probation officer during that time.

Destiny Bean[2] testified that she and the Defendant had been married since April 12, 2019.[3] She explained that she filed an order of protection against the Defendant in June 2021 following an altercation when he "had [her] in a choke hold so tight that [she] couldn't breathe[.]" After the Defendant released her from the choke hold, he hid her cell phone so

---

[1] The violation of probation warrant is not included in the record on appeal but was referenced by the trial court during the Defendant's probation violation hearing.

[2] Because the Defendant and two witnesses share the same surname, we refer to those witnesses by their first names for clarity. We intend no disrespect in doing so.

[3] Defense counsel indicated that the Defendant had filed for divorce from Destiny at the time of the probation violation hearing.

that she could not call 911. Destiny testified that the order of protection was still in effect at the time of the probation violation hearing.

On cross-examination, Destiny agreed that the altercation was "the only time during [their] marriage that [the Defendant] was violent[.]" She did not recall whether she struck the Defendant during the altercation but clarified that she "pushed and shoved him back" after he initiated the altercation. Destiny further agreed that no criminal charges were filed against the Defendant from the altercation and that there was a hearing set for the order of protection to be dismissed.

Angela Bean testified that she was the Defendant's mother and that he lived with her at the start of his probation. She explained that the Defendant did not have any "problems" while living with her and that he helped take care of the "family farm[.]" Angela did not see any "signs of drug usage" while the Defendant lived with her and agreed that he could again live with her if he remained on probation.

On cross-examination, Angela agreed that the Defendant wore an alcohol monitor during the "year, year and a half" period he lived with her. Angela further agreed that the Defendant had two prior domestic assault convictions against the same victim, who filed two orders or protection against the Defendant. The Defendant's ex-wife also filed an order of protection against him, which he violated five times. Angela also agreed that the victim of one of the Defendant's instant aggravated assault convictions was a full-time resident of a Department of Intellectual and Development Disabilities ("DIDD") group home and was diagnosed as "atypical autistic[.]" At the time of the aggravated assault, both the Defendant and the victim were living with Angela, and Angela had to "pull [the Defendant] off of" the victim. After the assault, Angela took the victim back to the group home. The Defendant later called Angela from jail and informed her the victim "pissed him off to the point he blacked out" and that he "needed to go back to jail[.]"

Angela agreed that the Defendant was arrested for the second aggravated assault conviction in the instant case while on bond for the first aggravated assault. She further agreed that the second aggravated assault victim had a fractured sternum, concussion, and broken finger. While on bond, the Defendant was again arrested for contacting the second aggravated assault victim. He called Angela from jail and told her that he "put himself back in there on purpose" to "test" the victim. He also told Angela that he did not feel "safe out in society[.]" In a separate phone call from jail, the Defendant told Angela that he "doesn't like being in society, [and] he needs to be away from people[.]" Angela testified that the Defendant had sought mental health counseling but that "nobody [] really want[ed] to help him[.]" She stated that the Defendant went to a treatment center called "Peninsula" for "two, three days[.]" On cross-examination, Angela testified that she

thought the Defendant was depressed and that he "just wanted to say stuff to get [her] attention or get somebody's attention."

The Defendant testified that he received therapy at the Helen Ross McNabb Center for approximately six months, beginning when he first started probation. He also participated in an "intensive outpatient program" for three months, which he explained was helpful "on behaviors, how to find [his] true self, depressi[on, and] stress." The Defendant testified that he had suffered from mental health issues for eight years at the time of the hearing. He held several different jobs for various lengths of time during his probation. The Defendant testified that he was "doing great" on probation prior to his failed drug test. He elaborated that he was "proud" of being "sober" on probation and that he was "married" and "happy" prior to his failed drug test.

The Defendant testified that Destiny initiated the physical altercation that resulted in the order of protection. He "restrained her" after she "pushed [him] and struck [him] twice" with a closed fist. He agreed to have the order of protection extended "to a date where it's set to be dismissed unless there's a problem[.]" The Defendant agreed that he had paid all of his court costs, fines, and fees and most of his probation fees. He testified that if given another chance at probation, he would "focus on [his] son[,]" help his mother and grandmother, and "[t]ry to get back in church." He denied using alcohol or any illegal narcotics on probation prior to his failed drug test. The Defendant testified that he failed the drug test due to the "[f]alling out with [his] wife and stress" and that he only smoked "concentrated" marijuana and was "surprised" that it contained methamphetamine. He stated that he needed a therapist to stay sober and that he had actively sought a therapist. The Defendant elaborated that he had a two-hour orientation with a therapist in 2021, but she recommended a different therapist. The Defendant could never "get a hold of" the different therapist or the therapist who conducted the orientation. The Defendant testified that he had "a few other orientations with a few other people[,]" but he "never could get a call back." He was not taking any prescription medicine for mental health issues at the time of the hearing but wanted to be.

On cross-examination, the Defendant averred that he continued to see a different therapist after his therapist at the Helen Ross McNabb Center ceased seeing patients, although he could not explain why his probation file indicated that he did not seek treatment. He explained that he denied a mental health services referral from his forensic social worker because he "was happy." The Defendant agreed that he had not had "one-on-one counseling" since 2019 and that he did not inform Officer Bickel of the order of protection until the judge in that case ordered him to do so. He stated that he did not remember the events of the two aggravated assaults in the instant case but did remember "restraining" Destiny during their altercation. The Defendant agreed that he had previously been on supervised probation, had done split confinement, had been to rehab, had done

- 4 -

mental health evaluations, had done intensive outpatient treatment for three months, had done one-on-one counseling, and had done medication management. When asked by the State what he hoped the trial court would offer him, he responded, "More." He agreed that he sent a text message to his ex-wife after being arrested for the probation violation, which stated that he was "the problem" and that he "deserve[d] whatever [wa]s coming [his] way."

Following the close of all proof, the trial court found that it was "uncontroverted that [the Defendant] ha[d] violated the terms and conditions of his probation[,]" based on the lab results from his failed drug test. The trial court noted that it had "limited resources to deal with mental health issues" and found it "significant" that the Defendant "didn't avail himself to some of the resources that were put in place before[.]" The trial court also noted the need to "balance the protection of the community[.]" The trial court ultimately determined that the "alternative to an incarcerated sentence" that the Defendant needed was not an available option to the trial court and therefore revoked the Defendant's probation "to serve" but made a "recommendation of [Charles] DeBerry [Special Needs Facility]" to address his mental health issues. The trial court entered a written violation order the same day, reiterating that the Defendant had violated the terms of his probation and was ordered to serve his sentence "as previously ordered." The order again noted the recommendation that the Defendant be placed in the Charles DeBerry Special Needs Facility and "undergo a mental health evaluation." The Defendant filed a timely notice of appeal on December 20, 2021.

## ANALYSIS

On appeal, the Defendant concedes that he violated the conditions of his probation but asserts that the trial court abused its discretion in ordering him to serve the remainder of his sentence in confinement. The State responds that the trial court properly exercised its discretion in ordering the Defendant to serve his sentence in confinement. We agree with the State.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence" and either "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by Chapter 36 of this title[.]" Tenn. Code Ann. § 40-35-311(e)(1)(A), (B). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of

- 5 -

discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id. (citing Harkins, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 646-47 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar, 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); Tenn. Code Ann. §§ 40-35-308, -310, -311. The trial court determines the credibility of the witnesses in a probation revocation hearing. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991) (citing Carver v. State, 570 S.W.2d 872 (Tenn. Crim. App. 1978)).

Our supreme court recently issued an opinion attempting to "clarify and bring uniformity to the standards and principles applied by the trial courts and appellate courts in probation revocation proceedings" to resolve confusion about the proper procedure for revoking a probationary sentence. State v. Dagnan, 641 S.W.3d 751, 753 (Tenn. 2022). In Dagnan, the Tennessee Supreme Court concluded that:

> probation revocation is a two-step consideration on the part of the trial court. See Tenn. Code Ann. §§ 40-35-308, -310, -311. The first is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation. This is not to say that the trial court, having conducted a revocation hearing, is then required to hold an additional or separate hearing to determine the appropriate consequence. The trial courts are required by statute to hold a revocation hearing. Id. § 40-35-311(b). However, there is no such requirement in the statutes or case law for an additional hearing before deciding on a consequence, and we decline to impose one. Defendant agrees that requiring a separate hearing solely to determine the consequence for violating probation is not necessary and would be too great of a burden on the trial courts. Still, we emphasize that these are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal. Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden.

Id. at 757. Thus, a trial court is required to make two separate decisions: (1) whether to revoke probation; and (2) if probation is revoked, what consequence will apply. Id. The court went on to explain the standard of review of a decision revoking probation as follows:

- 6 -

abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record. It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision. See [State v.] Bise, 380 S.W.3d [682,] 705-06 [(Tenn. 2012)]. "This serves to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary." [State v.] King, 432 S.W.3d [316,] 322 [(Tenn. 2014)]. When presented with a case in which the trial court failed to place its reasoning for a revocation decision on the record, the appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings. See King, 432 S.W.3d at 327-28.

Id. at 759.

The Defendant concedes that he materially violated his probation but asserts that the trial court abused its discretion in ordering the Defendant to serve his sentence in confinement by "fail[ing] to allow [the Defendant's] attorney to pursue" alternatives to incarceration. The Defendant also argues that the trial court's failure to discuss the Defendant's being in an "inpatient mental health facility" prior to his probation and his "suffering from mental health issues since the age of twenty-three" in its ruling makes it "difficult to assess whether they were thoughtfully considered prior to issuance of the ruling." After careful review, we conclude that the trial court did not abuse its discretion in ordering the Defendant to serve his sentence in confinement.

Although the trial court did not expressly mention a "two-step consideration," see Dagnan, 641 S.W.3d at 757, the trial court's findings reflect a thorough consideration of the consequence imposed for the probation violation as a distinct discretionary decision. The trial court noted that it needed to "balance protecting society, protecting others, and then trying when at all possible to not incarcerate someone, to rehabilitate." The trial court considered the Defendant's need for a mental health evaluation, noted there were "limited resources" to address mental health issues, and that the Defendant had not availed himself to those resources while on probation. The trial court also recommended "special needs and a mental health evaluation" after considering "some concerning issues with the [Defendant's] history that maybe with DeBerry they can address and look at." It is well-established that once the trial court determined that the Defendant had violated the terms of his probation, it was authorized to order him to confinement for the remainder of his sentence. State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). Moreover, this court has repeatedly held that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No.

01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999), perm. app. denied (Tenn. June 28, 1999).  The record demonstrates that the trial court exercised a conscientious and intelligent judgment in ordering the Defendant to serve the remainder of his sentence in confinement after considering how to protect the public while also addressing the Defendant's mental health issues.  We cannot conclude that the trial court abused its discretion in ordering the Defendant to serve the remainder of his sentence in the TDOC.  The Defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE